STATE OF NORTH CAROLINA v. JAMES CURTIS MOORE, BOBBY RAY DAWSON AND CARL PATRICK SPEIGHT

No. 687SC413

(Filed 18 December 1968)

1. **Criminal Law § 75— admissibility of inculpatory statements — effect of unlawful arrest**

Evidence of incriminating statements by defendants following their unlawful arrests for a misdemeanor is not rendered inadmissible because of the unlawful arrests, the trial court finding upon a *voir dire* hearing that the statements were made freely and understandingly, without promise or hope of reward, and without threat, coercion or any other undue influence.

2. **Constitutional Law § 31— identity of informer — moot question**

Where defendants' arrests without warrants were found to be illegal in prosecution for a misdemeanor, such finding renders moot defendants'

assignment of error relating to trial court's refusal to allow them to ascertain identity of police informer in order to determine if police had sufficient information to legally arrest defendants without warrant.

**3. Constitutional Law § 31— identity of informer**

The propriety of disclosing the identity of an informer must depend upon the circumstances of the case and at what stage of the proceedings the request is made.

APPEAL by defendants from *Parker (Joseph W.), J.,* at the 24 June 1968 Session of WILSON Superior Court.

Each defendant was tried and convicted in the Recorder's Court of the City of Wilson on a warrant charging that he "did unlawfully, wilfully and wantonly and maliciously did damage and destroy real property of Bargin [sic] Grocery." Upon a plea of guilty, each defendant was sentenced to two years in prison and appealed to the superior court.

The evidence indicated the following: Police investigated damage to the grocery immediately after it was inflicted on Saturday night, 6 April 1968. The owner was notified after midnight that his store had been looted, and when he arrived he found the plate glass windows smashed, merchandise burned and scattered throughout the store, and that considerable water damage necessitated by the fire had been incurred. On Monday, 8 April 1968, the police arrested and imprisoned the defendants but did not obtain warrants for them until after they were arrested and had made certain inculpatory statements. There was no evidence that the misdemeanors charged in the warrants were committed in the presence of the officers.

Each defendant offered evidence tending to establish an alibi. Upon a jury verdict of guilty, each defendant was sentenced to two years in prison, from which he appealed to this court.

*Attorney General T. Wade Bruton and Assistant Attorney General Bernard A. Harrell for the State.*

*Chambers, Stein, Ferguson & Lanning by James E. Ferguson, II, for defendant appellants.*

BRITT, J.

Defendants are represented in this court by the same attorney who represented them in the superior court.

[1] They first assign as error the admission into evidence, over their objection, the testimony of police officers concerning inculpatory statements made by defendants after they were arrested, They con-

tend that each defendant was charged with a misdemeanor, that the offense complained of was not committed in the presence of the arresting officers, and that the arrest of each defendant, made before the issuance of a warrant, was illegal.

Defendants' counsel relies very heavily on the case of *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, contending that the arrest of each defendant being illegal, any inculpatory statements made by him following the arrest fall within the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun.*

Conceding *arguendo* that the arrests of the defendants were illegal, we think that the facts in the instant case are materially different from those in *Wong Sun* and that the circumstances that caused the court to condemn the statement of defendant Toy in that case do not exist in the case before us.

In *Wong Sun,* there were two defendants including defendant Toy. The evidence indicated that an unnamed person arrested while possessing narcotics, who never before had acted as an informer, told federal narcotics officers that he had bought an ounce of heroin the night before from one known to him only as "Blackie Toy," proprietor of a laundry on a certain street. Without procuring an arrest warrant, some six or seven federal officers went to the laundry, where Toy also lived, at an early morning hour; one of them rang the bell and told Toy that he was calling for laundry and dry cleaning, but when Toy refused to admit them and started to close the door, the officer identified himself as a federal narcotics agent. Toy slammed the door and started running away, but the officers broke open the door and pursued Toy to his bedroom where his wife and child were sleeping. He was immediately handcuffed and arrested and within a matter of minutes thereafter made an inculpatory statement. It was under these circumstances that the United States Supreme Court held that verbal evidence, derived so immediately from an unlawful entry *and* an unauthorized arrest, was inadmissible. "Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the *unlawful invasion.*" (Emphasis added).

In the case before us, the traumatic effect of an illegal invasion is nonexistent. We will briefly review the record as to each defendant following his arrest. As to defendant Moore, the record discloses that at around 4:00 p.m. two police officers drove up in front of Moore's home and told someone outside of the home that they wanted to speak with Moore. Thereafter, Moore came out of his home, got in the patrol car, and the police advised him that they

were arresting him in connection with malicious damage to the Bargain Grocery and other business establishments. Officer Davis then advised him of his constitutional rights as declared in *Miranda*. We quote from his testimony as follows: "(I) told him he didn't have to tell us anything; that anything he did tell us could be used against him in a court of law; that he had a right for an attorney and had a right to have one present at the time of any questioning; that if he couldn't afford to pay one, one would be appointed for him at the time by the court. Asked him did he understand what we had told him, and he said he did." While still in the car traveling between Moore's home and the police station — approximately one-half mile — Moore made his incriminating statement.

The evidence indicates that shortly after defendant Moore was arrested, defendant Speight was arrested at his home. He was similarly advised of his rights and also acknowledged his understanding. Around lunch time on the day following and while defendant Speight was in jail, someone sent word to Officer Davis that Speight and some others wanted to see him. Davis went to the cell where they were, and Speight proceeded to make his incriminating statement.

Shortly after the arrest of Speight, defendant Dawson was taken into custody. He was advised of his rights in the same manner as defendant Moore was advised and acknowledged his understanding. On the following morning — some eleven or twelve hours later — he made his incriminating statement.

The circumstances which rendered Toy's statement in the *Wong Sun* case inadmissible were completely absent in the cases now before us. After a full *voir dire* hearing, the trial judge found as a fact that the statements made by the three defendants were made freely, voluntarily and understandingly, without promise or hope of reward, and without threat, coercion, duress, or any other undue influence.

We hold that the evidence pertaining to incriminating statements made by defendants was not inadmissible because of their unlawful arrests, and their assignment of error relating thereto is overruled.

[2, 3] Defendants' second assignment of error relates to the sustaining of the solicitor's objections to questions by defendants' counsel to police officers as to the identity of the person who gave them information connecting defendants with the crime. It appears that information from an unnamed informant prompted the police to arrest and question the defendants. Defendants' counsel argues that they were entitled to have their questions answered in order to determine if the police had sufficient information to legally arrest the

defendants without warrants. This assignment of error also relates to the legality of the arrests; inasmuch as we have conceded, *arguendo,* that the arrests were illegal, but having held the incriminating statements of defendants admissible, the question raised by the second assignment of error becomes moot. Furthermore, our State Supreme Court, in *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476, held that the propriety of disclosing the identity of an informer must depend on the circumstances of the case and at what stage of the proceedings the request is made. The court held in that case that the trial court did not commit error in failing to require the witness to provide the name of the informer. "Had the defendant * * * requested the name of the confidential informer as a possible defense witness, a more serious question would have been presented." We hold that under the circumstances in this case it was not error for the trial judge to sustain the objections of the solicitor to questions relating to the identity of the informer, and the assignment of error relating thereto is overruled.

Defendants assign as error the denial of their motion for nonsuit. Without summarizing the State's evidence, we hold that it was plenary to override the motion for nonsuit, and defendants' assignment of error relating thereto is overruled.

We have considered the other assignments of error brought forward in defendants' brief, but finding them to be without merit, they are overruled.

No error.

BROCK and PARKER, JJ., concur.